UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RUBEN BARAJAS-GUERRERO,<br><br>Defendant. | No. 1:17-cr-00148-NONE<br><br>ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE<br><br>(Doc. No. 37) |

Pending before the court is defendant Ruben Barajas-Guerrero's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The motion is largely based on defendant's medical condition and the risks allegedly posed to him by the ongoing coronavirus ("COVID-19") outbreak. (Doc. No. 37.) For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

Defendant Barajas-Guerrero was charged in this case by way of an indictment with two separate counts of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1). (Doc. No. 7.) Count one was alleged to have involved 50 grams or more of actual methamphetamine or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, while count two was alleged to involve 5 grams or more of actual

methamphetamine or 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine. (*Id.* at 1-2.) The indictment was the result of an investigation that ultimately involved defendant selling roughly 32 pounds of methamphetamine to an undercover agent in May 2017. (Doc. No. 16 (Presentence Report, "PSR") at 4–5.) On September 25, 2017, defendant entered a plea of guilty as to count one in the indictment. (Doc. Nos. 12, 14.) It was determined that under the U.S. Sentencing Guidelines defendant's adjusted offense level was 34 and his criminal history placed him in category VI, resulting in an advisory sentencing guideline range calling for a term of imprisonment of between 262 and 327 months. (PSR at 17.) The U.S. Probation Office recommended a sentence of 262 months. (*Id.*) Following that recommendation, on December 18, 2017, the sentencing judge imposed a sentence of 262 months in prison with a 60-month term of supervised release to follow and imposed the $100 special assessment fee. (Doc. Nos. 17; 18 at 2–6.)

Defendant is currently serving his sentence at the U.S. Bureau of Prisons' ("BOP") Lompoc Federal Correctional Institution in Lompoc, California ("FCI Lompoc") with a projected release date of December 31, 2035. *See Find an inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited May 7, 2021.) On March 15, 2021, defendant filed the pending motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 37.) On March 31, 2021, the government filed its opposition to the motion, and on April 7, 2021, defendant filed his reply thereto. (Doc. Nos. 44, 45.) Defendant then submitted a notice of supplemental authority on April 22, 2021 alerting the court to a recent Ninth Circuit decision which has been incorporated into this court's description of the legal standards applicable to the consideration of this motion below. (*See* Doc. No. 46.)

## LEGAL STANDARD

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp.

2

3d 964, 968 (D. Or. 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission [.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

---

[1] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the Regional Director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[2] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for

The policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[3]; *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, the Ninth Circuit recently held "that the current version of U.S.S.G. §1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). "In other words, the Sentencing Commission has not yet issued a policy statement 'applicable' to § 3582(c)(1)(A) motions filed by a defendant." *Id.* The Ninth Circuit clarified that "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.* (citing *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

---

which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, LAW360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, LAW360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[3] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

In so holding, the Ninth Circuit joined the five other circuits who have addressed this issue and "have unanimously held that U.S.S.G. § 1B1.13 only applies to § 3582(c)(1)(A) motions filed by the BOP Director, and does not apply to § 3582(c)(1)(A) motions filed by a defendant." *Id.*; *see, e.g.*, *United States v. Brooker (Zullo)*, 976 F.3d 228, 237 (2d Cir. 2020) ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."); *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020) ("In cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement §1B1.13."); *Gunn*, 980 F.3d at 1181 ("[T]he Guidelines Manual lacks an 'applicable' policy statement covering prisoner-initiated applications for compassionate release. District judges must operate under the statutory criteria—'extraordinary and compelling reasons'—subject to deferential appellate review."); *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) ("In short, we agree with the Second Circuit and the emerging consensus in the district courts: There is as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" (citation omitted)); *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021) ("We therefore agree with the district court that under the second part of § 3582(c)(1)(A)'s test, its finding that extraordinary and compelling reasons warranted a reduction in Maumau's case was not constrained by the Sentencing Commission's existing policy statement, U.S.S.G. § 1B1.13.").

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a

5

motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts that have done so have agreed that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020).

**ANALYSIS**

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id.* Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id.*

*Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-CR-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 461 F. Supp. 3d at 973–74; *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in §3553(a)).

**A.     Administrative Exhaustion**

On April 9, 2020, defendant Barajas-Guerrero submitted an administrative request to the warden at FCI Lompoc seeking release based on the Attorney General's expanded authority in the CARES Act to release federal inmates from prison to home confinement. (Doc. No. 37-2.) That request was denied on June 24, 2020 with an explanation that defendant was not eligible for release on home confinement pursuant to the CARES Act because he had served only "16.5%" of his sentence. (*Id.*) On July 19, 2020, defendant submitted an administrative request to FCI Lompoc seeking, this time, compassionate release based on his "extreme vulnerability to Covid 19." (Doc. No. 37-3.) On October 14, 2020—roughly three months after the request had been

6

submitted—the warden at FCI Lompoc denied defendant's request for compassionate release. (Doc. No. 37-4.) Defendant has exhausted his administrative remedies because he filed the pending motion for compassionate release after submitting a request to the warden and waiting more than 30 days without receiving a response. The government agrees that defendant has exhausted his administrative remedies. (Doc. No. 44 at 3.) Therefore, the court will turn to the merits of defendant's motion.

**B.     Extraordinary and Compelling Reasons**

"Extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D). Even though the catch-all of "other reasons" was included in the policy statement at a time when only BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

Thus, the medical condition of a defendant may warrant compassionate release where he or she "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1 (A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,

/////

> that substantially diminishes the ability of the defendant to provide
> self-care within the environment of a correctional facility and from
> which he or she is not expected to recover.

*Id.* at cmt. n.1 (A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, some courts have concluded that the risks posed by COVID-19 tips the scale in favor of release in particular situations. *See, e.g.*, *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405–06 (E.D. Pa. 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. In these situations, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1 (B).[4] In determining a defendant's projected release date, courts may take into account any "good time credits" awarded to the defendant by BOP for "exemplary" behavior in prison as set forth in 18 U.S.C. § 3624(b)(1). *See, e.g.*, *United States v. Burrill*, 445 F. Supp. 3d 22, 24 n.1 (N.D. Cal. 2020).

Here, defendant Barajas-Guerrero argues that extraordinary and compelling reasons warranting his compassionate release exist due to his medical conditions and the risks posed to him by COVID-19. To qualify for compassionate release, defendant must demonstrate that he is suffering from some "serious" medical condition "that substantially diminishes [his] ability . . . to provide self-care" in FCI Lompoc and the medical condition is one "from which he . . . is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii). Defendant claims that he suffers from chronic ischemic heart disease, coronary artery disease, obesity, Type 2 diabetes, hypertension,

---

[4] Because defendant Barajas-Guerrero is only 48 years old, (*see* PSR at 2), these age and age-related factors are irrelevant to the court's disposition of the pending motion.

8

chronic moderate asthma, hyperlipidemia, history of leg swelling, history of schizophrenia, and gastro-esophageal reflux disease. (Doc. No. 37 at 21–22.) The presentence report prepared prior to defendant's sentencing in this case noted that he suffered from Type 2 diabetes, high blood pressure, and high cholesterol. (PSR at 11.) Although defendant claimed at the time that he suffered from head injuries incurred during a prior arrest, a neurological evaluation revealed no issues with his brain or neurological status. (*Id.*) Defendant also claimed that he underwent heart surgery in 2010 after developing a blood clot, although it does not appear the U.S. Probation Office ever received supporting medical documentation in that regard. (*Id.*) In connection with the pending motion for compassionate release, defendant has submitted nearly 800 pages of medical documentation generated by the BOP. (Doc. No. 41 (sealed).) Defendant's BOP medical records reveal that, as of March 2, 2021, he suffers from at least 15 different health conditions, including Type 2 diabetes, a body mass index of 37, chronic ischemic heart disease, hyperlipidemia, essential (primary) hypertension, asthma of an unspecified severity, major depressive disorder (single episode with psychotic features), varicose veins, gastro-esophageal reflux disease, and various others ailments. (*Id.* at 710–11.) Simply put, defendant suffers from many serious medical complications, especially for a 48-year-old individual, placing him at greater risk of severe illness were he to contract COVID-19. *See generally COVID-19: People At Increased Risk*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last visited May 7, 2021). The government concedes that defendant suffers from many of these conditions, but counters that the defendant has never tested positive for COVID-19[5] and is now fully vaccinated against the virus. (Doc. No. 44 at 3.)

       Based on the evidence before the court, the court concludes that defendant Barajas-Guerrero has failed to demonstrate extraordinary and compelling reasons warranting his compassionate release. Defendant received his first dose of the Pfizer-BioNTech vaccine for

---

[5] It appears that the parties may dispute whether the defendant contracted COVID-19 while incarcerated and recovered or has never become infected. Resolution of any dispute as to that issue is unnecessary to the disposition of the pending motion. What is important, is that it is undisputed that the defendant is now fully vaccinated.

COVID-19 on December 30, 2020, and received his second dose on January 21, 2021. (Doc. No. 41 at 715 (sealed).) Because more than two weeks have passed since receiving his second dose, defendant is now fully vaccinated against the virus. *See COVID-19: When You've Been Fully Vaccinated*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html (last visited May 7, 2021). Defendant argues that "[v]accinations are not 100% effective in preventing infection." (Doc. No. 45 at 4.) According to defendant, "[t]his means a small percentage of fully vaccinated people can be expected to still become infected with COVID-19." (*Id.*) The court finds that defendant's arguments to be unpersuasive. First, even assuming the court credited his contention that those who are vaccinated may nonetheless contract COVID-19, defendant does not claim that a vaccinated individual may also suffer from a *severe* illness as a result—only that a vaccinated individual may still contract the virus. Here, defendant is seeking release from imprisonment based on the argument that he will suffer a severe illness or may well die if he were to contract COVID-19 again. (*See* Doc. No. 37 at 23 ("Due to his obesity and other medical conditions, Mr. Barajas-Guerrero has an increased risk for *serious illness or death* from COVID-19 complications should he again be infected with the virus." (emphasis added).) According to the Centers for Disease Control and Prevention ("CDC"), authorized vaccines in the U.S., including the Pfizer-BioNTech vaccine, "are highly effective at protecting vaccinated people against symptomatic and *severe* COVID-19." *See COVID-19: Interim Public Health Recommendations for Fully Vaccinated People*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated-guidance.html (last visited May 7, 2021) (emphasis added). At this point, medical evidence strongly suggests that fully vaccinated individuals, like defendant Barajas-Guerrero, are protected against becoming severely ill or dying from COVID-19. Defendant's claim that he may contract the virus, without regard to the severity of any illness, is not a sufficient basis upon which to conclude that he suffers from a "serious" medical condition "that substantially diminishes [his] ability . . . to provide self-care" in

/////

/////

FCI Lompoc. *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii).[6]

Defendant has failed to carry his burden of establishing his entitlement to a sentence reduction based on his purported susceptibility to COVID-19 because he is now fully vaccinated and has not cited any evidence indicating that he continues to be at severe risk from the virus. *See Greenhut*, 2020 WL 509385, at *1 ("The defendant bears the initial burden to put forward evidence that establishes an entitlement to a sentence reduction."). Accordingly, in this case, the court does not find extraordinary and compelling reasons justifying compassionate release under § 3582(c)(1)(A).

**C.     Consistency With the § 3553(a) Factors**

Because the pending motion fails to establish extraordinary and compelling reasons justifying compassionate release in this case, the court need not address whether any reduction in defendant's sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).

## CONCLUSION

For the reasons explained above, the court concludes that defendant has not demonstrated that "extraordinary and compelling reasons" exist warranting his compassionate release from prison. Accordingly, defendant's motion for compassionate release (Doc. No. 37) is denied.

IT IS SO ORDERED.

Dated:  **May 7, 2021**

_____
UNITED STATES DISTRICT JUDGE

---

[6] As of the date of this order, FCI Lompoc is reporting zero active cases among inmates and staff. *See COVID-19*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited May 7, 2021). While the undersigned does not necessarily accept these reported numbers at face value, there is also no evidence before the court challenging those reported numbers in this case.

11